*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

RUFUS CHAPPELL,

        Defendant-Appellant.

UNPUBLISHED
July 22, 2026
12:14 PM

No. 372286
Wayne Circuit Court
LC No. 23-003320-01-FH

Before: MALDONADO, P.J., and RIORDAN and YOUNG, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of embezzlement by an agent or trustee of $20,000 or more but less than $50,000, MCL 750.174(5)(a), for which he was sentenced to three years' probation and restitution of $47,214.85. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant began his employment with the Unemployment Insurance Agency (UIA) in 1979. On October 1, 2015, defendant became a UIA unemployment insurance examiner. As a UIA examiner, defendant's duties included attending hearings on denied unemployment claims as the state's representative. Defendant's direct supervisors from 2015 to 2019 were Tom Sanfilippo and Rochelle Washington. While defendant was employed and ordinarily worked at Cadillac Place in Detroit, he also attended hearings in Southfield.

On April 4, 2004, defendant signed the state's Motor Vehicle Driver Agreement, which included the following term: "I will agree I will not operate a State of Michigan motor vehicle without possession of a valid Michigan driver's license with proper endorsements when applicable." The agreement also included a provision mandating that motor-pool vehicles be used only for official state business. On May 16, 2018, defendant signed an acknowledgment of the UIA's official policies, which included immediately notifying his supervisor if his driver's license was suspended.

Defendant reserved vehicles from the state's motor pool multiple times from August 17, 2015 to January 16, 2019, with each use being billed to the UIA from Vehicle Travel Services

(VTS). Defendant's license was suspended at least twice between 2016 and 2020. Eventually, Jamie Mathews, a statewide travel coordinator, was alerted to defendant's suspended license and disabled his UIA driving privileges. Mathews reviewed the fuel and reservation records for vehicles reserved under defendant's employee identification number, which indicated suspiciously high figures.

Karmen Robinson, a labor relations specialist with the Department of Talent and Economic Development, investigated defendant for allegations of driving a state motor-pool vehicle with a suspended license. Robinson interviewed defendant's supervisors and reviewed the fuel records, reservation records, and defendant's hearing schedules. Robinson's review indicated that defendant reserved a vehicle from the motor pool for a total of 1,212 days, with 889 days not containing a hearing for the UIA; drove a total of 175,789 miles; and incurred $47,214.85 in total costs billed to the UIA. Robinson interviewed defendant, who appeared with his union representative. Washington also was present and took notes. At the interview, defendant claimed that he used the motor pool for employment purposes and was given permission by his former supervisor. Ultimately, defendant was charged with embezzlement as noted.

At trial, defendant's managers confirmed that he was never given permission nor sought permission to use the motor pool in the manner allegedly used by him. The managers also confirmed that they never disclosed defendant's employee identification number to anyone else.[1] David Hofmeister, the motor pool and acting fleet operations manager for the VTS, explained the process for reserving, checking out, and returning a vehicle from the motor pool. He explained that the motor-pool vehicles were leased, and VTS would charge use and mileage rates to recoup the costs of operating the motor pool. As noted, the rates charged on behalf of defendant were $47,214.85 for the time period in question.

During trial, defendant and the prosecutor were provided with Washington's notes from defendant's interview with Robinson. Defendant moved to suppress his statements from the interview because of late disclosure of the notes, which violated the discovery order. The prosecutor explained that he received the notes the same day as defendant and was unaware of their existence until that point. The trial court ruled that the notes were not intentionally suppressed and that defendant was not surprised by the notes because the notes discussed the contents of his interview, and Robinson testified about the interview at the preliminary examination. However, the trial court delayed Robinson's testimony until the next trial day so defense counsel could review the notes.

Before Robinson testified, the trial court held an evidentiary hearing regarding the notes. Robinson confirmed that Washington took notes during the interview and stated that she (Robinson) also took notes. Robinson used both notes to generate her report, and the notes were meant to be destroyed. Robinson could not explain why the notes in this case were not destroyed. Robinson admitted that she failed to submit the notes to the prosecution, stating that she overlooked them. After an off-the-record discussion, Robinson testified and explained the steps in her

---

[1] The employee identification number is used to check out and drive a state motor-pool vehicle.

investigation. Defendant was found guilty as charged and sentenced as delineated above. This appeal followed.

## II. JURY INSTRUCTION

Defendant argues that the trial court erred by failing to sua sponte instruct the jury on the lesser included offense of embezzlement of more than $1,000 but less than $20,000, MCL 750.174(4)(a). Defendant waived this issue.

Waiver is "the intentional relinquishment or abandonment of a known right." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted). "A waiver extinguishes the right, as well as any right to pursue an alleged error on appeal." *People v King*, 512 Mich 1, 9; 999 NW2d 670 (2023).

After the trial court read the final jury instructions, it inquired whether the parties were satisfied. Defense counsel replied: "I'm satisfied, Judge." Defense counsel also expressly stated that he had no objection to the verdict form. Thus, because defendant expressed his satisfaction with the trial court's recitation of the jury instructions, defendant has waived this issue, and we will not consider it. See *Kowalski*, 489 Mich at 503 ("When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver.").[2]

## III. DISCOVERY VIOLATION

Defendant argues that the trial court's remedy for the prosecution's discovery violation was not sufficient. We disagree.

### A. STANDARD OF REVIEW

"We review a trial court's decision regarding the appropriate remedy for a discovery violation for an abuse of discretion." *People v Dickinson*, 321 Mich App 1, 17; 909 NW2d 24 (2017). "An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes." *Id*. at 18. "To obtain relief for a discovery violation, the defendant must establish that the violation prejudiced him or her." *Id*. at 17-18.

### B. ANALYSIS

"There is no general constitutional right to discovery in a criminal case." *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). Late disclosure of evidence by the prosecution under MCR 6.201(J) is a nonconstitutional violation. See *id*. MCR 6.201(J) states:

> If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in

---

[2] Defendant raises a parallel claim that defense counsel was ineffective in this regard, which we address *infra*.

evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion.

"Trial courts have the discretion to fashion an appropriate remedy for a discovery violation." *People v Rose*, 289 Mich App 499, 525; 808 NW2d 301 (2010). "The exercise of that discretion involves a balancing of the interests of the courts, the public, and the parties. It requires inquiry into all the relevant circumstances, including the causes and bona fides of tardy, or total, noncompliance, and a showing by the objecting party of actual prejudice." *Id*. at 525-526 (quotation marks and citation omitted). Suppression is a severe remedy for a discovery violation. See *Elston*, 462 Mich at 764. A continuance to allow a defendant to prepare or review the evidence alleviates any harm to a defendant's case arising from a discovery violation. *Id*.

Defendant claims that the trial court's remedy of delaying Robinson's testimony was insufficient, arguing that the "sudden appearance of this crucial information at this crucial time in the proceedings made the remedy wholly inadequate." However, while defendant requested at trial that the entire interview be suppressed, the evidence untimely disclosed was Washington's notes of the interview. Defendant does not claim that he was not provided with Robinson's report of the interview and, as the prosecution noted, Robinson testified about the contents of the interview at the preliminary examination. Robinson admitted that she failed to provide the notes to the prosecution and claimed that it was an oversight.

We agree with the trial court that the notes were not intentionally suppressed. Robinson explained the reason for their untimely disclosure and, when the notes were discovered, the prosecutor provided them to the defendant. The prosecutor's intent was a factor for the trial court to consider when it was fashioning a remedy, and here the delayed disclosure was unintentional. See *Rose*, 289 Mich App at 525.[3]

The trial court also considered the impact of the delayed disclosure on the defendant. See *Dickinson*, 321 Mich App at 19. Defendant claims that the late disclosure impaired his ability to prepare a defense but then fails to discuss the contents of Washington's notes or how their late disclosure hindered defense strategy. Moreover, a review of the record indicates that defense counsel effectively cross-examined Robinson using Washington's notes. Robinson admitted that she received Washington's notes in December 2022, but failed to provide them to the prosecutor, explaining that she overlooked them. This oversight may have had the effect of undermining her credibility as a witness. Defense counsel also referenced a discrepancy between Robinson's

---

[3] While the trial court ruled that the notes were not intentionally suppressed, it never addressed a potential violation under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Defendant attempted to raise a *Brady* violation but withdrew his claim after discussing the issue with the prosecutor. While defendant cites *Brady* in his brief, he does not present an argument for a *Brady* violation. "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004).

testimony and Washington's notes. Specifically, Robinson was unsure whether defendant stated that he used the motor pool to drive to the Southfield hearings. After reviewing Washington's notes, Robinson confirmed defendant's answer that he did.

To summarize, while defendant claims that the late disclosure of Washington's notes affected his defense, the record demonstrates that he effectively cross-examined Robinson and, through the use of the notes, highlighted issues with her testimony and memory. Moreover, defendant fails to identify which aspects of Washington's notes would have benefited his case at trial, and nothing in the record points to the prosecutor intentionally withholding the notes. Therefore, defendant again fails to establish prejudice, and the trial court's remedy was within the range of principled outcomes. See *Dickinson*, 321 Mich App at 18.

## IV. PROSECUTORIAL ERROR[4]

Defendant argues that the prosecutor erred during closing argument. We disagree.

### A. PRESERVATION AND STANDARDS OF REVIEW

When preserved, "[w]e generally review de novo claims of prosecutorial misconduct on a case-by-case basis, in the context of the issues raised at trial, to determine whether a defendant was denied a fair and impartial trial." *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010). Issues of prosecutorial error are "preserved by contemporaneous objections and requests for curative instructions." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017) (quotation marks and citation omitted). Defendant never objected to the prosecutor's closing argument, making this issue unpreserved. *Id*.

"Because the challenged prosecutorial statements in this case were not preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

### B. ANALYSIS

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. "They are generally free to argue the evidence and all

---

[4] "Although we recognize that the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals, we agree that the term 'misconduct' is more appropriately applied to those extreme—and thankfully rare—instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) (internal footnote omitted).

reasonable inferences from the evidence as it relates to their theory of the case." *Id*. "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64. "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Id*. at 64.

Defendant argues that the prosecutor erred by presenting a civic-duty argument in closing. The prosecutor stated:

> 175,000 miles is . . . the life of for a lot of people a car. You know, no car payment on those miles, no insurance payments, no maintenance, no tires, no oil changes. Oh, I have a radiator that just blew, I need tires. That's the benefit that he got.

> Counsel is going to make this argument about budget moving around. That money, yes, it's a budget from the State of Michigan but where does the State of Michigan get their money? Who is out the loss of the money? Taxpayers.

Defendant is correct that a civic-duty argument is improper. See *People v Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014) (explaining that the prosecutor may not "invite[] jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty"). However, one of the elements that the prosecutor needed to prove for the charged embezzlement offense was that the money stolen belonged to the state, i.e., the principal. See *People v Lueth*, 253 Mich App 670, 683-684; 660 NW2d 322 (2002). By correctly referencing the fact that the state taxpayers paid the money into the state's treasury that defendant allegedly embezzled, the prosecutor was highlighting an element of the charged offense, and its use does not constitute plain error.

In his opening statement, defense counsel said that the amount the state claimed defendant embezzled was from the state's overall budget, which accounted for motor-pool use. Defense counsel thus suggested that the state never had a legitimate loss of over $20,000, as the money would have been allocated and spent by the state for some purpose regardless of the alleged acts by defendant. By referencing the taxpayers, the prosecutor arguably was responding to the defense theory of any alleged taxpayer loss. See *Dobek*, 274 Mich App at 64. Thus, defendant cannot now claim that the prosecutor committed plain error.

In any event, even if the prosecutor's remarks were plainly erroneous, defendant cannot show prejudice. The prosecutor's comment was very brief. Further, the trial court instructed the jury that attorneys' statements and arguments are not evidence, and to reach a verdict on the basis of the evidence. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citations omitted). Moreover, there was ample evidence of defendant's guilt. The fuel and reservation logs indicated that defendant used his employee identification number to use numerous motor-pool vehicles. Defendant's hearing schedule showed that a majority of the reservations occurred either on days he did not have a hearing or on holidays.

Defendant acknowledged signing the Motor Vehicle Agreement and work rules, demonstrating that he was aware of the appropriate use of the motor pool and that his use was inappropriate. Consequently, reversal is not warranted.

## V. INEFFECTIVE ASSISTANCE

Defendant argues that defense counsel was ineffective for failure to (1) request an instruction for the lesser included offense of embezzlement of more than $1,000 but less than $20,000; and (2) object to the prosecutor's improper civic-duty argument in closing. We disagree.

## A. PRESERVATION AND STANDARDS OF REVIEW

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Because defendant did not move for a new trial or a *Ginther*[5] hearing, defendant failed to preserve this issue. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

## B. ANALYSIS

The Michigan and United States Constitutions guarantee criminal defendants the right to counsel. Const 1963, art 1, § 20; US Const, Am VI. "The constitutional right to counsel is not merely the right to have a lawyer stand or sit nearby; rather, a criminal defendant has the right to the effective assistance of counsel." *People v Otto*, 348 Mich App 221, 231; 18 NW3d 336 (2023). "A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *Fyda*, 288 Mich App at 450.

"Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021). To demonstrate deficient performance, "the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Armstrong*, 490 Mich at 290. "[T]he defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). "We will not second-guess matters of strategy or use the benefit of hindsight when assessing counsel's competence." *Id*.

### 1. LESSER OFFENSE INSTRUCTION

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"[J]ury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted). "Even if the instructions are imperfect, there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Milton*, 257 Mich App 467, 475; 668 NW2d 387 (2003).

"Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *People v Yeager*, 511 Mich 478, 490; 999 NW2d 490 (2023). "We have held that a jury instruction on a necessarily included lesser offense is appropriate if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Id*. (quotation marks and citation omitted). Embezzlement of more than $1,000 but less than $20,000 is a lesser included offense of embezzlement of more than $20,000 but less than $50,000. See *People v Englebrecht*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 370317); slip op at 13; *People v Golden*, 121 Mich App 490, 497; 328 NW2d 667 (1982).

While defendant argues that defense counsel should have requested a lesser offense instruction, he ignores defense counsel's apparent strategy. Defense counsel's theory of the case was defendant did not commit any embezzlement. In his opening statement, defense counsel cited the alleged lack of evidence directly identifying defendant reserving or using motor-pool vehicles, showing damage to the motor-pool vehicles, or showing monetary gain by defendant from use of the motor pool. Defense counsel pursued this strategy during the trial itself. For example, defense counsel elicited testimony from Mathews admitting that she was not an investigator and never observed defendant driving a motor-pool vehicle. Mathews agreed with defense counsel that the only information tying defendant to the vehicles was his employee identification number. Defense counsel otherwise drew attention to the lack of evidence identifying defendant reserving and driving motor pool vehicles. Had defense counsel requested an instruction for the lesser included offense of embezzlement of more than $1,000 but less than $20,000, he would have undermined his own trial strategy that defendant was innocent of the crime. See *People v Smith*, 336 Mich App 79, 104; 969 NW2d 548 (2021) (holding that the decision to not request a lesser included offense instruction to pursue the theory that the defendant was completely innocent was a reasonable trial strategy); *People v Allen*, 331 Mich App 587, 611; 953 NW2d 460 (2020), vacated in part on other grounds 507 Mich 856 (2021) ("Therefore, requesting an instruction on simple assault would have been inconsistent with the strategy of attempting to force an all-or-nothing verdict."). For these reasons, defense counsel did not perform deficiently by failing to include a lesser offense instruction.[6]

---

[6] Alternatively, we agree with the prosecution that a lesser offense instruction would have been unsupported by the evidence and therefore unwarranted even if defense counsel requested it. See *Armstrong*, 305 Mich App at 240. The evidence showed that defendant, or one or more persons with his employee identification number, incurred fees totaling $47,214.85. There is no reasonable view of the evidence to suggest that defendant legitimately incurred $27,214.85 or more of these fees, which would reduce his embezzlement to under $20,000. See MCL 750.174(4)(a).

## 2. FAILURE TO OBJECT TO CLOSING ARGUMENT

Defendant also argues that defense counsel was deficient for failing to object to the prosecutor's statement in closing argument referencing state taxpayers. As discussed, however, to the extent that the prosecutor's statement was proper, defense counsel was not deficient for failing to object to it. See *People v Johnson*, 315 Mich App 163, 175; 889 NW2d 513 (2016) ("A defendant is not denied the effective assistance of counsel by counsel's failure to make a futile or meritless objection."). Alternatively, even if the prosecutor's statement was improper and defense counsel was deficient for failure to object to it, defendant is unable to demonstrate prejudice. The prosecutor's statement was brief, and the trial court instructed the jury that attorneys' arguments and comments are not evidence. Further, defense counsel refuted the statement in the defense opening statement. Thus, there is no reasonable probability of a different outcome, but for defense counsel's failure to object. See *Armstrong*, 490 Mich at 290.

## VI. CONCLUSION

For the reasons stated above, we affirm.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Riordan
/s/ Adrienne N. Young